In the Matter of Lynn D. EDMONDS, Debtor.

No. 99–59508–WS.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Aug. 24, 2000.

Roberta W. Andrews, UAW Ford Legal Service Plan, Livonia, MI, for Debtor.

Stuart A. Gold, Law Offices of Gold and Lange, Southfield, MI, trustee.

## OPINION ON TRUSTEE'S MOTION FOR ORDER COMPELLING TURNOVER OF ESTATE PROPERTY

WALTER SHAPERO, Bankruptcy Judge.

### Introduction

This case presents the legal issue of whether Debtor's profit sharing check, received post-petition, is property of the estate. Debtor is an employee of Ford Motor Company ("Ford"). Ford's practice is to share profits at year end with its employees, given sufficient profits. Debtor is an hourly worker and any profit sharing is determined by written agreements between the United Auto Workers' Union ("UAW") and Ford. The agreement covering the relevant payment is dated October 8, 1999. (*See* Debtor's Br. in Opposition to Trustee's Motion, Ex. A.) Distributions under the agreement were scheduled to be made in the year 2000, based on 1999 profits. Any employee who had been terminated and not reinstated at the end of the plan year was excluded from partici-

pating in the plan. Thus, Debtor had to be on the active employment rolls of Ford on December 31, 1999, in order to receive a distribution under the plan. The amount of an individual's distribution was based on their 1999 eligible earnings.

Debtor met the qualifications under the plan and received a check for $5,509.17 on March 3, 2000.[1] Meanwhile, on December 15, 1999, Debtor had filed a chapter 7 petition for relief. Debtor did not disclose the possible profit sharing payment on his schedules, believing it was not property of the estate. He later revealed his interest at the § 341 meeting. Trustee has moved for turnover of these funds, arguing they constitute property of the estate. The Court held a hearing on this matter and has considered oral arguments and post-hearing written submissions. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E).

### Discussion

Debtor's interest in the profit sharing payment, as of the petition date, was in the nature of a contingent interest. The profit sharing agreement between the UAW and Ford gave him an interest in a potential future cash payment, contingent on sufficient profits and Debtor being on the payroll as of December 31st. Trustee argues case law clearly supports his position that this interest is property of the estate. In *In re Yonikus,* the debtor failed to disclose his interests in a workers' compensation claim and personal injury lawsuit that he filed one month before filing his petition for relief. *See* 996 F.2d 866, 868 (7th Cir.1993). The debtor also failed to report proceeds he later received from both ac-

tions. Years later, the trustee discovered the suits, and only then did the debtor amend his schedules and claim an exemption for the workers' compensation benefits. *See id.* In finding that the debtor's interest in the benefits was property of the estate, the Court of Appeals for the Seventh Circuit noted that " 'the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.' " *Id.* at 869 (quoting *Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)). "A debtor's contingent interest in future income has consistently been found to be property of the bankruptcy estate. In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Id.* (citations omitted); *see also Rau v. Ryerson (In re Ryerson),* 739 F.2d 1423, 1425–26 (9th Cir.1984) (finding that debtor's unvested, contingent interest in receiving payment should his employment contract be canceled, and the after-acquired proceeds, are property of the estate, to the extent attributable to pre-petition services). Further, the *Yonikus* court held that the proceeds of the claim also became property of the estate "under § 541(a)(6) when the award was converted to money." 996 F.2d at 871; *see also Jess v. Carey (In re Jess),* 169 F.3d 1204, 1207–08 (9th Cir.1999) (allocating a portion of a contingency fee received post-petition to pre-petition services). The *Yonikus* court also rejected the debtor's argument that, because the proceeds were exemptible under § 522 he was not required to disclose either them or the claim. The court declared that "[d]ebtors have an absolute duty to report whatever interests

---

**1.** This was calculated by applying a factor of 15.3431% to Debtor's eligible pay of $60,656.46, for a gross amount of $9,306.58.

they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *Id.*

Debtor argues the cases relied on by Trustee are distinguishable because those debtors had a *vested* right to receive payment on the petition date. Debtor points to *Hoffman v. Bruneau (In re Bruneau)*, 148 B.R. 4 (Bankr.D.Conn.1992), where the debtor opted, one week after filing, to participate in her employer's "Voluntary Enhanced Exit Program." *Bruneau*, 148 B.R. at 4. This "downsizing" program entitled the debtor to a $20,000 payment, (an amount equal to her annual base salary), which she elected to receive over fifty-two weeks. *See id.* at 4–5. The court distinguished the *Ryerson* decision and found that the payments arose from her post-petition decision to terminate her employment, and were "not sufficiently rooted in the prebankruptcy past to justify that they be included in the debtor's estate." *See id.* at 6 (citations omitted). Debtor reads the *Bruneau* decision as requiring the pre-petition triggering of any contingency or condition attached to an interest in order for that interest to become property of the estate. Debtor concludes his profit sharing payment is not property of the estate because, as of filing, he had not yet completed his 1999 work year and the fact that Debtor would receive a profit sharing check was "unascertainable and speculative" and "completely at the whim of Ford." Debtor also asserts an unpublished Sixth Circuit opinion in *DeMarco v. Ohio Decorative Products, Inc.*, 19 F.3d 1432 (6th Cir.1994) supports his position. As to *DeMarco*, under Sixth Circuit rules, unpublished opinions are of limited precedential value and citation to them is disfavored.

■ The Court questions the analysis of the other cases relied on by Debtor, and finds the cases cited by Trustee to be better reasoned. The Court is not certain it agrees with the *Bruneau* court's conclusion that the debtor's voluntary decision to end her employment, made one week after filing and entitling her to one year's pay and continuing benefits, was not sufficiently rooted in the debtor's pre-petition past. The question should not be whether a future interest is vested or contingent. Clearly a contingent future interest is a legally cognizable interest, and thus property of the estate.[2] *See Segal v. Rochelle*, 382 U.S. at 379, 86 S.Ct. 511; *Yonikus*, 996 F.2d at 869. The proper inquiry regarding a contingent interest should be: if it vests post-petition, does any property a debtor thereby acquires or becomes entitled to acquire "relate back" to the pre-petition period? As the U.S. Supreme Court characterized the test in *Segal*, the interest must be "sufficiently rooted in the pre-bankruptcy past" to justify its inclusion in the debtor's estate. *Segal*, 382 U.S. at 380, 86 S.Ct. 511. Although the *Segal* opinion precedes the Code, Congress adopted this characterization when it enacted § 541. *See In re Yonikus*, 996 F.2d at 869 n. 3; *In re Potter*, 228 B.R. 422, 423 (8th Cir. BAP 1999) (citation omitted).

■ In the matter before the Court, given primarily the facts of the pre-petition agreement between the UAW and Ford, and that each day of pre-petition employment and work by Debtor was both rendered with the expectation of eligibility for a profit sharing payment, and the fact that Debtor's efforts, along with that of others, were themselves contributing to the potential profitability of Ford, one can say the "rooted in the past" criterion has been met here.

The statutory definition of property of the estate, as encompassing as it does "all

2. Otherwise, law students and bar examinees would not be tortured with questions about such obscure topics as the Rule Against Perpetuities or the Rule in Shelley's Case.

legal and equitable interests of the debtor in property," as most courts have opined, could hardly be broader. It leaves very little that can or should be excluded. There are specific exclusions set forth, none of which are applicable here. The statutory provisions in §§ 541(a)(2) through (a)(7) also provide language of specific inclusions. One of them, § 541(a)(6), provides some additional basis for Trustee's position. That section includes "proceeds" of a property interest that is part of an estate, as also being or becoming property of the estate. Inherently it is therefore a recognition that the underlying property interest that gives rise to the proceeds, is property of the estate, notwithstanding the fact that those proceeds may be received or receivable post-petition. To conclude otherwise would be to illogically construe the statute as permitting a property interest to itself be excluded from the estate, but its proceeds to be included. Seen from that perspective, many of the discussions about vested versus non-vested interests, or contingent or conditional interests, are much less relevant, if not irrelevant, to the issue of whether that interest is property of the estate. Instead, any contingencies or conditions would be more relevant to the value of that interest and/or how it might be administered. Additional support for finding Debtor's right to receive a profit sharing payment is property of the estate can, by inference, be found in the federal exemption scheme. Section 522(d)(10)(E) exempts a debtor's "right to receive ... a payment under a ... profitsharing ... plan or contract." This indicates that Congress intended any such right to receive payment to be property of the estate, but potentially exemptible. There is no need to exempt an interest in property that is not property of the estate.

Debtor argues that it would be unduly burdensome for an estate to remain open to wait for the vesting of a contingent interest. Under the facts in this case, that time period was only a matter of three to four months, or from mid-December to early March. Yet, Debtor notes, if a debtor filed early in a calendar year, a case might remain open for up to fifteen months because the payment would not be received until the following March. However, the answer is not, for that reason, to automatically exclude property that is otherwise clearly property of the estate. Rather it becomes a matter of what the trustee can or should do with it in connection with the proper administration of the estate.

In an analogous situation, the debtor in *In re Potter* held a contingent remainder interest in a non-spendthrift trust, as of the petition date. *See Potter*, 228 B.R. at 423. His ninety-one year old grandfather was the life beneficiary. *See id.* The debtor stood to inherit approximately $75,000 if he survived his grandfather. *See id.* The debtor argued that the value of his interest should be "limited to the value of that beneficial interest as it existed on the date of the filing of the petition for relief." *Id.* at 424. The Bankruptcy Appellate Panel for the Eight Circuit, in upholding the bankruptcy court, rejected this argument and found not only the contingent interest to be property of the estate, no matter what its value may have been, but any property acquired post-petition from that interest was also brought into the estate by operation of § 541(a)(6). *See id.* The court allowed the case to be administratively closed, "preserv[ing] the bankruptcy estate's interest in the ... trust as an unadministered asset," and leaving the trustee free to reopen the case to administer the asset upon realization. *Id.* Thus the court, was willing to accommodate the trustee for an indefinite time period, given the size of the potential recovery for creditors. The Court sees no

undue burden in the matter before it. Trustee evidently made the determination, as of the first meeting of creditors in January when Debtor disclosed his interest in the profit sharing, that it was worth waiting until March for Debtor's contingent interest to vest and to then administer the resulting property. Therefore, the Court concludes that both Debtor's contingent interest in the profit sharing plan and the resulting check are property of the estate.

Trustee demanded that Debtor turnover $5,258.90, apparently his determination of a pro rata amount, based on the calendar year. Debtor argues that this proration method does not properly reflect the amount that is attributable to the pre-petition period. In a substantial sense, § 541(a)(6) is applicable here, in that the portion of the bonus that is properly considered and calculated to be earnings from services performed by Debtor after commencement of the case should be excluded from what is turned over. The profit sharing was calculated by multiplying eligible earnings for 1999 by a factor of 15.34310%. Debtor asserts that his post-petition 1999 earnings totaled $3,623.78. However, the documentation provided by Debtor does not support this figure. Debtor attached a check stub for the pay ending December 26, 1999, and a print out for the pay ending December 19, 1999 with no explanation as to the entries. The petition date falls within a pay period, so there is no clean demarcation between pre-and post-petition earnings based on the pay periods. In addition, the amount that Debtor asserts he earned post-petition appears nowhere in the documentation. Finally, Debtor does not tie his "post-petition earnings" to "eligible pay." The profit sharing is based on the latter, and it does not appear to be equal to gross earnings. As of December 26, 1999, Debtor's pay stub shows $71,217.17 as the gross year-to-date earnings. However, Debtor's eligible pay as of December 31, 1999 was only $60,565.16.

Thus, even if the Court were to find Debtor's post-petition earnings totaled $3,623.78 as Debtor asserts, the Court is unable to calculate post-petition eligible pay. Therefore, the Court will set this matter for an evidentiary hearing to establish what portion should be considered as services performed by Debtor after the filing of the petition.

Trustee had also asked the Court to assess costs in the amount of $500.00, incurred by Trustee in bringing this motion. After considering this issue, the Court has concluded costs are not warranted, given what the Court concludes were good faith legal arguments advanced by Debtor in support of his position.

### *Conclusion*

The Court finds that Debtor's contingent future interest in the profit sharing was property of the estate as of the petition date. An evidentiary hearing will be set to determine what portion of the resulting check is to be brought into the estate.