**In re Sharon Kay RUETZ, Debtor.**

**No. 04–16216 HRT.**

United States Bankruptcy Court, D. Colorado.

Dec. 2, 2004.

Bradley P. Pollock, Littleton, CO, for Debtor.

### ORDER RE: MOTION TO COMPEL TURNOVER OF PROPERTY OF ESTATE

HOWARD R. TALLMAN, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Chapter 7 Trustee's Motion to Compel Turnover of Property of Estate, filed on August 23, 2004, and the Debtor's Response thereto, filed on November 10, 2004. The parties have submitted a Stipulation of Facts, and provided relevant exhibits, showing that the Debtor was party to a pre-petition listing agreement concerning the sale of real property, wherein the Debtor was entitled to receive a commission if she produced a buyer for the property. After considering the parties' arguments and reviewing the exhibits, the Court is ready to rule.

### *Facts*

1. The Debtor entered into an Exclusive Agency Listing Contract [the "Listing Agreement"], dated January 20, 2004, with James and Karyn Sheehan [the "Sellers"].

2. On February 28, 2004, during the term of the Listing Agreement, the Sellers entered into a Contract to Buy and Sell Real Estate [the "Sale Contract"] with Dave and Robin Kreywonos [the "Buyers"].

3. The Debtor filed this chapter 7 case on March 29, 2004.

4. The sale of the real estate subject to the Sale Contract closed on April 30, 2004.

5. The Debtor received a commission, pursuant to the Listing Agreement

and the Sale Contract, in the amount of $4,449.28.

### Discussion

The Trustee asserts this commission is property of the estate. But, at hearing, the Trustee conceded that if this commission is estate property, the Debtor is entitled to a wage exemption that limits the estate's portion to 25% of the $4,449.28 received by the Debtor or $1,112.64.

The Debtor asserts that, due to contingencies that appear in the Sale Contract, the commission is not property of the estate, or if it is, the estate's interest as of the petition date is significantly less than what the Trustee claims. Specifically, the Debtor contends that, as of the date she filed her bankruptcy petition, the Sale Contract was subject to certain key and unfulfilled contingencies that made Debtor's entitlement to the commission uncertain. For example, the Debtor points to a financing contingency requiring the buyer to obtain a loan commitment. The Debtor also notes an insurance contingency requiring the buyer to obtain insurance. In addition, the Sellers waived any right to specific performance and agreed that the Buyers could walk away from the deal for any reason and only forfeit the $2,000.00 earnest money deposit as liquidated damages. The Debtor argues that such contingencies subjected the contract to termination at any point right up to closing, making the Debtor's interest in the commission uncertain and not an earned entitlement until closing actually occurred. Therefore, the Debtor argues that her right to the commission did not exist at the time of filing, or if it did, it was limited to a portion of the liquidated damages allowed by the contract. The Court finds the Debtor's analysis concerning her rights under the contracts to be too narrow.

Section 541 defines property of the estate as all rights held by the Debtor as of the time of filing. The estate is comprised of all attributes of the Debtor's interest, whether contingent or not. *In re Yonikus,* 996 F.2d 866, 869 (7th Cir.1993) ("[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.") (quoting *Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966)). The estate also benefits from any appreciation that may occur as contingencies or other conditions are fulfilled or as detriments expire or fail. *See, e.g., Stoebner v. Wick (In re Wick),* 276 F.3d 412 (8th Cir.2002) (stock options contingent upon completion of employment); *Potter v. Drewes (In re Potter),* 228 B.R. 422, 424 (8th Cir. BAP 1999) (contingent future interest in testamentary trust) ("Nothing in § 541 suggests that the estate's interest is anything less than the entire asset, including any changes in its value which might occur after the date of filing."); *In re Edmonds,* 273 B.R. 527 (Bankr.E.D.Mich.2000) (contingent future interest in profit sharing plan).

Other Courts have addressed the issue of whether real estate commissions received postpetition become property of the bankruptcy estate. In *Parsons v. Union Planters Bank (In re Parsons),* 280 F.3d 1185 (8th Cir.2002), the court found that the debtor's real estate commission was earned prepetition, at the time she produced a ready willing and able buyer, even though the commission did not become payable until the closing which occurred post-petition. As a consequence, it was property of the bankruptcy estate. *Id.* at 1188. In *In re Brandon,* 184 B.R. 157 (Bankr.N.D.Fla.1995), the court found that a real estate commission paid postpetition was property of the estate because it was traceable to a prepetition sale contract.

*Id.* at 159–60. In that case, the deal was contingent upon the buyers obtaining proper zoning. *Id.* at 158. That rezoning process took many months and required extensions of the closing dates. *Id.* at 158–59. But those contingencies had no effect on the court's conclusion that the estate was entitled to the full amount of the commission.

■ Section 541 broadly defines what is property of the estate, but it also relies on state law in that determination. In both *Parsons* and *Brandon* the courts looked to state law to determine when the commissions were earned. The Debtor argues that under Colorado state law, she was not entitled to be paid a commission until the sale was closed on April 30, 2004, approximately thirty (30) days after she filed. Accordingly, she contends that, as of the petition date, she was not due any commission. The Debtor's authority is COLO. REV. STAT. § 12–61–201 and she cites certain Colorado cases.

■ The Court finds the Debtor's argument unpersuasive. The Court will, however, preface this discussion by noting that COLO. REV. STAT. § 12–61–201 is not a model of drafting clarity. That statute provides:

> No real estate agent or broker is entitled to a commission for finding a purchaser who is ready, willing, and able to complete the purchase of real estate as proposed by the owner until the same is consummated or is defeated by the refusal or neglect of the owner to consummate the same as agreed upon.

COLO. REV. STAT. § 12–61–201. A casual reading of that language, in isolation, might suggest that a real estate commission is not earned until a deal is closed. But a reading of that statutory language, in conjunction with abundant Colorado case law, makes it plain that a commission is earned when a broker or agent produces

a buyer and that COLO. REV. STAT. § 12–61–201 merely addresses when that earned commission becomes payable. *See Moore and Co. v. T–A–L–L, Inc.,* 792 P.2d 794, 799 (Colo.1990) ("A real estate broker acting under a valid listing agreement is entitled to receive a commission when the broker produces a purchaser who is ready, willing, and able to purchase the property upon the terms designated by the seller and when the broker is the efficient agent or procuring cause of the sale."); *Circle T Corp. v. Deerfield,* 166 Colo. 238, 444 P.2d 404, 406 (1968) ("The general rule is that a real estate broker, under a valid listing agreement, is entitled to recover a commission (1) when he produces a purchaser who is ready, willing and able to purchase the property upon the terms designated by the principal, and (2) he is the efficient agent or procuring cause of the sale."); *Real Equity Diversification, Inc. v. Coville,* 744 P.2d 756, 759 (Colo.Ct.App.1987) ("A real estate broker who has a valid listing agreement with the seller is entitled to recover a commission when he produces a purchaser who is ready, willing, and able to buy the property on the terms set by the seller.").

■ The law in Colorado is similar to the state laws of Missouri and Florida, which were considered by the courts in *Parsons* and *Brandon.* The real estate commission is earned when the broker or agent produces the buyer. Just as in this case, it is typical that a contract for the sale of real estate will be contingent on financing, in-depth inspections and other events. COLO. REV. STAT. § 12–61–201 makes it plain that the right to collect that commission is inchoate until the deal closes or the seller refuses or neglects to complete the deal. But the contingent or inchoate nature of that interest certainly does not negate the broker or agent's right

to receive a commission if the contingencies are satisfied.

The Debtor cited a number of cases to the Court. In *Watson v. United Farm Agency, Inc.*, 165 Colo. 439, 439 P.2d 738 (1968) (en banc), even though the sale did not close, the court found that the real estate broker was entitled to a commission because he had proven that he produced a ready, willing and able buyer. In *Dunton v. Stemme*, 117 Colo. 327, 187 P.2d 593 (1947) (en banc), a real estate sale transaction did not close because the seller terminated the contract. He had a right to terminate the contract under its terms on account of the buyer's failure to tender payment in a timely manner. Under the circumstances, the seller was not at fault for failing to close the deal and the broker's right to receive a commission from the seller failed under the terms of the contract. In both *Daybreak Const. Specialties, Inc. v. Saghatoleslami*, 712 P.2d 1028 (Colo.Ct.App.1985), and *Horton–Cavey Realty Co. v. Reese*, 34 Colo.App. 323, 527 P.2d 914 (1974), the courts upheld lower court decisions finding that commissions were not due to the brokers because they failed to prove that they had produced ready, willing and able buyers.

■ The cases cited by the Debtor are neither contrary to the Trustee's position nor are they in conflict with the cases cited above by this Court. They do illustrate that the failure of a broker to perform in accordance with the listing agreement or a failure of a deal due to a contingency in the sale contract may result in no commission being paid. This Court agrees that is the law. But that does not change the Court's analysis. A bankruptcy trustee takes the rights of a debtor subject to any contingencies that may burden those rights. That only means that a bankruptcy trustee must wait for the unfolding of future events to know what, if anything, those rights are worth. In this case those contingent rights proved to have value for the estate.

### *Conclusion*

■ In light of the above, it is plain that the Debtor's rights in the real estate commission arose prepetition, no later than the time that the Sale Contract was executed by the Buyers and the Sellers. The fact that the Sale Contract was subject to contingencies means that the Debtor's rights in the commission were conditioned upon future events. Nonetheless, it is those contingent rights which became property of the estate and it is the estate that benefits when those conditions are satisfied and the right to the full commission becomes enforceable. The Debtor's position that the existence of contingencies in the Sale Contract somehow limits or cuts off the estate's rights to what the Debtor was entitled to receive on the date of filing is not consistent with § 541. In accordance with the above discussion, it is

**ORDERED** that Trustee's Motion to Compel Turnover of Property of Estate is GRANTED. Debtor is directed to turn over the sum of $1,112.64 to the Trustee within ten (10) days of the date of this Order.